IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROL AYANGBILE, and CYRIL AYANGBILE, | § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:24-CV-1075-N-BW |
| CHILDREN'S HEALTH SYSTEM OF TEXAS, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Reconsideration filed on August 5, 2025 (Dkt. No. 61 ("Mot.")), which seeks reconsideration of United States District Judge David C. Godbey's July 8, 2025 Memorandum Opinion and Order (Dkt. No. 57 ("July 8 Mem. Op.")).  Plaintiffs filed an appendix in support of the Motion. (Dkt. No. 62 ("P. App.").)  Defendant Children's Health System of Texas filed its response, brief in opposition, and supporting appendix on August 26.  (Dkt. Nos. 72, 73 ("Resp."), 74 ("D. App.").)  Plaintiffs filed a reply on September 9.  (Dkt. No. 75 ("Reply").)  Also before the Court is a Request for Award of Reasonable Expenses submitted by Defendant as provided in the July 8 Memorandum Opinion and Order. (Dkt. No. 60.)  The Court held a hearing on the Motion and other matters on October 24.  (*See* Dkt. No. 91.)

On August 12, 2025, Judge Godbey referred all pending and future discovery matters to the undersigned magistrate judge for disposition pursuant to 28 U.S.C. § 636(b).  (Dkt. No. 68.)  After considering the relevant facts and applicable law, the

Court denies Plaintiff's motion for reconsideration and orders that Attorney Sarah Tomiyo Stoner pay $9,174.00 to Defendant's counsel pursuant to Judge Godbey's order awarding sanctions. (*See* Dkt. No. 57.)

## I. BACKGROUND

Plaintiffs Carol Ayangbile and Cyril Ayangbile, represented by Attorney Sarah Tomiyo Stoner, filed this lawsuit against Defendant Children's Health System of Texas in May 2024. (Dkt. No. 1.) They assert claims of racial discrimination in employment, retaliation, and intentional interference with contract. (*See* Dkt. No. 11.)

The discoverability of Carol's mental health records has been the subject of dispute during this case. On April 22, 2025, Judge Godbey granted in part Children's Health's motion to compel, concluding that, because the Ayangbiles are seeking damages based on emotional pain and mental anguish, information related to Carol's mental health is generally relevant and discoverable. (Dkt. No. 37 ("Apr. 22 Mem. Op.") at 4-5.)

Children's Health filed a second motion to compel on April 17, 2025. (Dkt. No. 33.) That motion arose out of the abrupt ending to the deposition of Dr. Jada Jackson, Carol's counselor and life coach. Children's Health asserted that, despite having been served with a subpoena duces tecum instructing her to bring certain counseling records pertaining to Carol, Dr. Jackson appeared at the deposition without responsive documents and then left the deposition after about an hour, before it was concluded. (Dkt. No. 34 at 1-2.)

-2-

Once briefing on the April 17 motion to compel was completed, Judge

Godbey entered a memorandum opinion and order granting the motion.  (Dkt. No.

57 ("July 8 Mem. Op.").)  Judge Godbey recounted the following facts:

> On April 10, before the deposition started, Jamie Ashton –
> counsel for Children's Health – asked Dr. Jackson for the documents
> listed in the Subpoena.  Dr. Jackson stated that she did not bring the
> documents because Sarah Tomiyo Stoner – counsel for the Ayangbiles
> – told her it was not necessary to do so because Children's Health
> already possessed the summary of client services.  During Dr. Jackson's
> deposition, Ashton asked Dr. Jackson if she possessed records
> pertaining to Carol's counseling.  Dr. Jackson responded that she did
> possess such records, but she did not bring the records to the deposition
> because "as a therapist, the notes belong to me and I sent you the
> summary."  Ashton responded, "I'm trying to figure out . . . if [the
> counseling records] exist at all, which sounds like they do; is that
> correct?"  Stoner interjected,
>
>> Objection; form.  I – honestly, Jamie, if you want to get her to
>> testify as to what records she keeps on, I think she deserves to
>> have an attorney represent her because I feel like this is going
>> down the path of setting her up for some sort of action.  I don't
>> know.
>
> Ashton explained that Children's Health "has no interest in
> taking action against Dr. Jackson" and that she asked the questions
> about recordkeeping to figure out why the counseling records have not
> been produced.  Dr. Jackson then said,
>
>> Okay.  I'm not doing this anymore.  How about that?
>>
>> And I will get my attorney.  And with that being said, I'm not
>> doing this anymore because I have no idea what you-all are
>> doing here.  But I am not doing this anymore and I will call my
>> attorney.
>
> Dr. Jackson left the deposition immediately after that.

(July 8 Mem. Op. at 2-3 (record citations omitted).)

Judge Godbey granted Defendant's April 17 motion and ordered Dr. Jackson to produce documents responsive to the subpoena duces tecum, including counseling notes. (*Id.* at 5-6.) He also granted the motion in part with respect to deposition-related sanctions, finding that "Stoner lodged a speaking objection during Dr. Jackson's deposition that was so inflammatory as to cause the deponent to leave the deposition prematurely." (July 8 Mem. Op. at 7.) He further found that the speaking objection was improper and that it "frustrated the fair examination of Dr. Jackson." (*Id.*) Judge Godbey therefore ordered Stoner not to make speaking objections in this case and to refrain from instructing witnesses not to answer a question unless permitted by Fed. R. Civ. P. 30(c)(2). (*Id.*) Finally, Judge Godbey, relying on Rule 37(a) standards, found that Plaintiffs did not rebut a presumption that they should pay the movant's reasonable expenses for bringing the motion "because they have not identified any special circumstance that would render an award of reasonable expenses unjust." (*Id.* at 8.) He determined that "[t]he delays in discovery caused by the Ayangbiles and their counsel are not substantially justified, and Children's Health has experienced prejudice due to these delays." (*Id.*) Accordingly, Judge Godbey directed Children's Health to file a request for an award of reasonable expenses within 14 days and directed the Ayangbiles to file any objections they might have within seven days. (*Id.* at 9.)

Children's Health filed its request for expenses supported by attorney billing records on July 22. (Dkt. No. 60.) The Ayangbiles did not file any objection to the request within the seven-day period or at any time thereafter.

Plaintiffs instead filed the instant Motion for Reconsideration on August 5, requesting that the Court reevaluate its decision to impose sanctions. The Ayangbiles' motion is based on an answer Dr. Jackson gave during her resumed deposition on July 9. Specifically, they contend that the following exchange between Attorney Stoner and Dr. Jackson warrants a reconsideration of sanctions relating to the premature termination of the first deposition:

> Q: During your last deposition, did you leave early in response to Ms. Ashton's questioning or in response to something I said?
>
> Ms. Ashton: Objection, form.
>
> A: Ms. Ashton's questioning.

(P. App. 9.) The Ayangbiles contend that this testimony proves it was Children's Health's questioning that prompted Dr. Jackson to leave the deposition early, undercutting any finding that Attorney Stoner's speaking objection caused Dr. Jackson to leave. (Mot. at 3-5.) Plaintiffs also assert that the prior order manifests confusion relating to the production of medical records release authorizations and that Plaintiffs' representation about documents produced was accurate at the time it was made. (*See* Mot. at 5-9.)

## II. LEGAL STANDARDS

### A. Reconsideration.

Plaintiffs request reconsideration of an interlocutory order that did not result in a final judgment. Its reconsideration is governed by Fed. R. Civ. P. 54(b). *See Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) ("A court reconsiders an interlocutory order under Rule 54(b)."). "The court

possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *S.E.C. v. Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *2 (N.D. Tex. Mar. 15, 2013) (internal quotation marks and citation omitted). "Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Arrieta v. Yellow Transp., Inc.*, No. CIV.A.3:05CV2271-D, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (internal quotation marks omitted). A motion for reconsideration should not be used to "rehash[] old arguments or advanc[e] theories of the case that could have been presented earlier." *Id.* "[A] district court's broad discretion under rule 54(b) must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Turk v. Pershing LLC*, No. 3:09-CV-2199-N, 2019 WL 13074701, at *1 (N.D. Tex. Aug. 1, 2019).

## B.    Rule 37 award of reasonable expenses.

The assessment of reasonable attorney's fees under Rule 37(a) is "determined through a two-step process, otherwise known as the lodestar method." *Colhouer v. Nationwide Mut. Ins. Co.*, No. 3:24-CV-2869-K, 2025 WL 1838935, at *2 (N.D. Tex. July 3, 2025) (internal quotation marks and citation omitted). "The lodestar is the product of the hours reasonably spent on the matter and an appropriate hourly rate for such work." *Id.* "Once the lodestar is calculated, the court may then enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)."

-6-

*Id.* (internal quotation marks and citation omitted). The lodestar calculated in this manner is presumptively reasonable, and it is the fee applicant's burden to support its application with documentary proof establishing that the fee request is reasonable. *Id.* The party requesting modification of the lodestar bears the burden of establishing that an enhancement or reduction is justified. *See id.* (quoting *Ferguson v. Sw. Reg'l PCR, LLC*, No. 5:22-CV-182-H, 2023 WL 9890884, at *2 (N.D. Tex. July 31, 2023) (alteration brackets omitted)). Under Rule 37(a), a court granting a motion to compel may require payment of the movant's reasonable expenses, including attorney's fees, against "the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both[.]" Fed. R. Civ. P. 37(a)(5)(A).

"Additionally, a party seeking attorneys' fees may only recover for time spent in preparing and prosecuting the actual discovery motion—that is the 'reasonable expenses incurred in making the motion, including attorney's fees.'" *Ferguson*, 2023 WL 9890884, at *3 (quoting *Lohr v. Gilman*, No. 3:15-CV-1931-BN, 2018 WL 3993725, at *3 (N.D. Tex. Aug. 21, 2018)). "If a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing." *Id.* (quoting *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015)). Even so, "[a] movant seeking attorneys' fees is . . . 'charged with the burden of showing the reasonableness of the hours billed and, therefore, [is] also charged with proving that they exercised billing judgment,' which 'requires

documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant.'" *KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 606617, at *7 (N.D. Tex. Feb. 15, 2017) (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)).

## III. ANALYSIS

### A. Plaintiffs' motion does not provide grounds warranting reconsideration of the July 8 Memorandum Opinion and Order.

The Ayangbiles' Motion is primarily aimed at the finding that Attorney Stoner's deposition misconduct caused Dr. Jackson to prematurely terminate her first deposition. In the July 8 Memorandum Opinion and Order, Judge Godbey found that

> Stoner lodged a speaking objection during Dr. Jackson's deposition that was so inflammatory as to cause the deponent to leave the deposition prematurely. This inappropriate speaking objection frustrated the fair examination of Dr. Jackson.

(July 8 Mem. Op. at 7.) As clarified during the October 24 hearing, Plaintiffs do not take issue with Judge Godbey's finding that Attorney Stoner's speaking objection was improper. Indeed, Attorney Stoner acknowledges that the speaking objection was regrettable. Plaintiffs instead take aim at the factual finding that the speaking objection caused Dr. Jackson to leave the first deposition. They point to the question recited above from Dr. Jackson's resumed deposition as new evidence that warrants reconsideration of that finding and, therefore, the award of sanctions.

Even assuming that Dr. Jackson's testimony qualifies as new evidence that is sufficient to prompt a reexamination, Plaintiffs have not shown that the finding or

the imposition of sanctions should be rescinded or modified. The Motion is heavily predicated on portraying defense counsel as overly aggressive and "confrontational" during the first deposition, suggesting that counsel took an accusatory tone that threatened Dr. Jackson with consequences for violating state licensing requirements. (*See* Mot. at 2, 3, 4-5.) They argue that defense counsel's "antagonistic tone" and "aggressive questioning" caused Dr. Jackson to end the deposition, not Attorney Stoner's objection. (*Id.* at 4-5.) An objective review of the available record does not support their narrative.

Children's Health served Dr. Jackson with a subpoena duces tecum directing her to produce documents at the deposition. (Dkt. No. 35 at App. 6.) Although no written objection to the subpoena was served by either Dr. Jackson or Plaintiffs, Dr. Jackson appeared at the deposition without all the documents. (*See* July 8 Mem. Op. at 2, 5.) Before the deposition began, she explained that she was told by Attorney Stoner that it was unnecessary to bring documents to the deposition. (July 8 Mem. Op. at 2 (citing Dkt. No. 34 ¶ 14).) Not having any of the requested documents, defense counsel sought to confirm that responsive documents existed. Attorney Ashton, representing Children's Health, did this by referring Dr. Jackson to a state statute mandating that a licensed counsel maintain certain records. (Dkt. No. 35 at App. 20 (discussing Tex. Admin. Code § 681.36).) Based on the available transcript, it appears that Attorney Ashton walked Dr. Jackson through each of these categories of documents to confirm that they existed. (Dkt. No. 35 at App. 21.) Then, after

counsel pointed Dr. Jackson to the document request in the subpoena, the following

exchange occurred:

> Q.    Do you have those records?
>
>        Ms. Stoner: Objection; form.
>
> A.    No.
>
> Q.    (By Ms. Ashton) They're not in the patient portal, this patient
>        portal?
>
>        Ms. Stoner: Same objection.
>
> A.    They're in the patient portal.
>
> Q.    (By Ms. Ashton) Okay.  But you did not bring them today?
>
> A.    No.
>
> Q.    Why?
>
>        Ms. Stoner: Objection; form.
>
> A.    I sent the information I sent and that is sufficient as far as what I
>        can give.

(Dkt. No. 35 at App. 21-22.)  Counsel then probed what Dr. Jackson meant when

she said that the information provided was sufficient "as far as what I can give."

Attorney Ashton explained that a purpose of the subpoena and deposition was to

obtain those records and that she was trying to determine whether they existed.

Defense counsel does not appear in this exchange to have been antagonistic,

confrontational, or overly aggressive.  Dr. Jackson arrived at the deposition without

any of the documents clearly required by the subpoena, and she explained that

Plaintiff's counsel confirmed that she need not comply with the subpoena, which

would be inappropriate.[1]  Attorney Ashton sought to ascertain whether the requested documents existed, and she reasonably did so by confirming that documents that are required by state law existed.  Counsel's questions were direct, but neither the content nor the apparent tenor of the questioning appears to have been highly confrontational or suggested that action might be taken against Dr. Jackson's professional license.

It was instead Attorney Stoner who suggested that the questioning might imperil Dr. Jackson.  When defense counsel asked Dr. Jackson to confirm that the subpoenaed records exist, Attorney Stoner interjected with what she now acknowledges was an improper speaking objection: "[H]onestly, Jamie, if you want to get her to testify as to what records she keeps on, I think she deserves to have an attorney represent her because I feel like this is going down the path of setting her up for some sort of action.  I don't know."  (Dkt. No. 35 at App. 22-23.)  By this objection, Attorney Stoner suggested that counsel might be "setting [Dr. Jackson] up" and implied to Dr. Jackson that she should not continue answering questions without an attorney present.  Judge Godbey's description of the speaking objection as "inflammatory" is apt.  (July 8 Mem. Op. at 7.)

---

[1] In support of its request for an award of expenses, Children's Health attaches an excerpt from Dr. Jackson's continued deposition on July 9 in which she testified that a colleague told her that providing a summary was sufficient to satisfy the subpoena and that she later spoke to Attorney Stoner, who said it was "fine" to bring only the summary to the deposition.  (Dkt. No. 60 at ECF p. 14.)

The finding that Attorney Stoner's speaking objection caused Dr. Jackson to terminate the deposition is not undermined by Dr. Jackson's statement at the second deposition.  Dr. Jackson was not asked to explain why she ended the deposition. Nor did counsel delve deeply into the matter to capture any nuance there might have been.  Instead, Plaintiffs simply gave Dr. Jackson a binary choice to place blame for her departure on one attorney or the other:

> Q.    During your last deposition, did you leave early in response to Ms. Ashton's questioning or in response to something I said?
>
> A.    Ms. Ashton's questioning.

(P. App. 9 (objection omitted).)  But Dr. Jackson's attribution of causation does not justify reconsideration of the finding that was made.  Attorney Stoner's inflammatory objection communicated that, as an attorney, she perceived that there was a significant risk to Dr. Jackson if she continued to participate in the deposition and suggested that she should consult a lawyer.  It was at that point that Dr. Jackson ended the deposition and said she would "get [her] attorney."  (Dkt. No. 35 at App. 23.)  Dr. Jackson might believe she left the first deposition as a result of an unpleasant and threatening line of questioning, but any threat that she felt was suggested more by Attorney Stoner's objection than by the content of the questions asked by Children's Health.  The finding that Attorney Stoner's objection caused Dr. Jackson to leave the first deposition is supported by the record in its entirety, even considering Dr. Jackson's statement at the second deposition.

The Ayangbiles also seek reconsideration of the July 8 Memorandum Opinion and Order on grounds that it evidences confusion about a medical records release that Carol had been ordered to provide. In reciting the facts concerning a prior motion to compel, Judge Godbey noted that Carol had not provided an authorization for the release of medical records as previously ordered. (July 8 Mem. Op. at 2.) In the Motion, Plaintiffs contend that she had done so prior to issuance of that opinion and that "careful examination of the record" shows the release was irrelevant to the outstanding issues between Children's Health and Dr. Jackson's attorney when the order issued. (Mot. at 5-7.) This argument, which is explicitly premised on facts "as far as Plaintiffs understand" them (Mot. at 7), does not show that Carol has timely complied with the prior order. Contrary to Plaintiffs' assertion that Judge Godbey was confused about the facts, the information advanced by Plaintiffs does not undercut Judge Godbey's assessment that Plaintiffs have delayed discovery by resisting the production of relevant medical records. (July 8 Mem. Op. at 8 (observing that "delays in discovery caused by the Ayangbiles and their counsel are not substantially justified").)

Finally, the Ayangbiles request modification of the prior order with respect to what they consider an implication that they made a misrepresentation to the Court. (Mot. at 7-9.) Referring to a prior motion to compel by Children's Health, Judge Godbey recounted that Defendant sought production of counseling records underlying Dr. Jackson's summary but that the Ayangbiles "represented to the Court that the summary was the format in which Dr. Jackson kept and provided the

-13-

records." (July 8 Mem. Op. at 2.) He relied on their representation to deny that motion to compel. (*Id.*) Plaintiffs believe that Judge Godbey's sanctions award implicitly considered that representation to be false based on Dr. Jackson's subsequent production of additional records. (Mot. at 7.) In the instant motion, they state that the representation's accuracy is established by statements from the second deposition and suggest that the "new records were prepared by Dr. Jackson's counsel" and that Plaintiffs did not attempt to obstruct Children's Health's discovery of information from Dr. Jackson. Their argument does not warrant reconsideration for two reasons. First, the record—including the portion Plaintiffs cite—does not establish that, when Plaintiffs made the representation about Dr. Jackson's records that it was accurate—i.e., that other responsive documents did not exist or were cumulative. Second, whether it was true when it was said is immaterial. The prior order need not be reconsidered because Judge Godbey made no findings about the accuracy of that representation—explicit or implicit—and did not impose sanctions based on such a finding. The award of sanctions is based by other independent grounds.

The Ayangbiles have not demonstrated that the July 8 Memorandum Opinion should be rescinded or modified in any way. The purported new evidence does not undermine the finding that Attorney Stoner's improper objection prompted the premature termination of Dr. Jackson's deposition, much less demonstrate that it is a manifest error or that it is clearly erroneous. To the contrary, consideration of the

record in its entirety shows that the finding is well supported and proper. After thoughtful deliberation of Plaintiff's Motion, it is denied.

## B. Children's Health is awarded reasonable expenses in connection with making the April 17 motion to compel.

In the July 8 Memorandum Opinion and Order, Judge Godbey granted Defendant's request "for the Ayungbiles to pay its reasonable expenses, including attorney's fees, incurred in making the motion to compel." (July 8 Mem. Op. at 9.) Children's Health has submitted a request for attorney's fees totaling $12,607.50. (Dkt. No. 60 at 4.) It supports its request with attorney time records identifying the attorneys who works on the matter, their respective billing rates, and descriptions of the work performed. The Ayangbiles filed no objections to the request.

The billing records contain entries by two attorneys who worked on the matter, both having more than ten years' experience. One attorney billed at a rate of $345 and the other at $300 per hour. The Court finds that these rates are reasonable and within the market rate for similarly qualified attorneys in the district. The billing records, however, do not show explicit exercises of billing judgment and, therefore, the Court finds reason to consider more closely some of the entries. Several of the time entries for work performed between April 22 and May 6 concern legal research and communications with Dr. Jackson's attorney about the release of medical records and her apparent demand for a witness fee in connection with the second deposition. Although these issues might not have arisen but for the need to reconvene Dr. Jackson's deposition, they do not directly relate to the two issues that

-15-

precipitated the motion to compel—i.e., Attorney Stoner's confirmation to Dr. Jackson that she need not produce all responsive documents and her improper speaking objection that prompted Dr. Jackson to terminate the deposition. After removing this time and other entries that appear to have been duplicative or otherwise not spent planning and preparing the motion to compel, the Court finds that Children's Health reasonably expended a total of 29.8 attorney hours attorney at a total cost of $9,174.00.

The Ayangbiles have not objected to Children's Health's fee request, and they have not shown that any adjustment of the lodestar amount is appropriate under the *Johnson* factors. Nor does not Court sua sponte perceive that any adjustment is necessary. Because the fee award was precipitated by Attorney Stoner's conduct— i.e., counseling noncompliance with the subpoena duces tecum and making an improper speaking objection—it should be imposed on her.

## IV.  CONCLUSION

The Court **DENIES** Plaintiffs' Motion for Reconsideration (Dkt. No. 61) and, pursuant to Fed. R. Civ. P. 37(a)(5)(A), **ORDERS** Attorney Sarah Tomiyo Stoner to reimburse Defendant in the amount of **$9,174.00** for reasonable attorney's fees.  Full payment must be made to Defendant's counsel at Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 8117 Preston Road, Suite 500, Dallas, Texas 75225 no later than **December 15, 2025**.

**SO ORDERED** on November 3, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE